William Hamilton, the defendant was indicted for unlawfully, wantonly, willfully, maliciously and mischievously cutting the cotton warp on one hundred and twenty-six looms, alleged to be of the value of one thousand dollars, and of the goods and chattels of Daniel Lamot, Jr., to the great damage of the said Daniel Lamot, Jr., and against the peace and dignity of the State.
The facts on which the indictment was found by the grand jury were as follows: Daniel Lamot, Jr., was the owner of a cotton factory in Brandywine hundred, *Page 282 
and on the morning of the 26th of June last discovered that; some person during the preceding night had clandestinely entered the beaming room of the factory and cut one hundred and twenty-six cotton warps on the like number of beams and power looms in the room, and which had been so placed on them preparatory to commencing the process of weaving the warps that day, consisting of over thirteen thousand yards of warp, and worth at least forty cents per pound, and that the injury thereby done to the warp, and the damage thereby done to him would amount to as much as fifteen hundred dollars. The defendant had been in his employ as a hand in the factory, and in the beaming room in it, but he had been discharged from his service a few months before, and from the evidence before them the grand jury were satisfied that he had secretly and maliciously committed the act to injure and damage Lamot.
The question in this case has been well argued on both sides, and we regret that we have had not had more time to give to the consideration of it in the mean while, since this is the first time that it has ever been formally discussed and submitted for decision to a Court in this State, in the only way that could entitle it to the weight and authority of a precedent on the point to guide or control us in the practical solution and determination of it in the form in which it now comes before us. But with our present impressions in regard to it, and with the conflict of authorities before us which have been cited in the argument, we are not prepared to sustain the motion which has been submitted by the counsel for the defendant to quash the indictment. For we cannot but think after the best consideration which we have been enabled to give to the subject, that a wanton, malignant and malicious injury deliberately perpetrated by one person upon the property of another, is something more than a mere trespass in the ordinary acceptation of that term, and is, and ought to be, a public offense, and indictable as such by the law of this State. And we shall take occasion hereafter to assign our reasons for this conclusion in a more formal and considerate manner than is either convenient, or expedient perhaps, at the present time, in the mere matter of disposing of this motion. Among the authorities cited in the argument, Bishop
and Wharton on criminal law and Wheeler's CriminalCases so lay it down, while Bennett Heard's LeadingCriminal Cases and Blackstone in his Commentaries
assert the contrary, that is to say, that it is not a public offense, nor indictable as such at common law, as the counsel for the defendant contends. But the discrepancy and conflict between these authorities, as well as that which appears in the multitude of American cases which have been cited in the argument, and are referred to by the text-writers, serve to show that it is, to say the least, still a vexed and unsettled question in this country. *Page 285 
But we apprehend that malicious mischief and injury to private property as a mere misdemeanor, and indictable and punishable as such, has received a wider and a more enlarged interpretation in this country than it has in England. In that country upwards of eighteen hundred sections, it is estimated, of acts running from the reign of Henry the Eighth down to the reign of George the Third, have been enacted for the special purpose of providing against malicious mischief and injury; and as such private wrongs and offenses were thereby originally made felony without benefit of clergy, and are still made felonies of a high degree, and the penalties thereby prescribed for them were more certain and specific than that of the common law, the books give but few examples of common law indictments for this class of offenses. But as these English statutes do not obtain in this country, malicious mischief, as a common law offense, has here been the subject of frequent adjudications. In its general application here it may be defined to be any malicious or mischievous injury, either to the rights of another, or to those of the public in general. The recent inclination, however, so far as the common law is concerned, is to restrict the party injured to his civil remedies, except (1.) where the offense is committed secretly in the night time, or in such a way as to inflict peculiarly wanton injury; or (2.) where it is marked by malignant cruelty to animals; or (3.) where it is accompanied with a breach of the peace, or it directly and manifestly tends to a breach of the peace, as being done in the presence of the party injured, to his terror, or against his will. 2 Whart. Amer. Cr. Law, Secs.
2002, 2003, 2004. And malice, either expressed or implied, is required to sustain the indictment. Idem, Sec. 2006.
But whether it is settled or not, that every mere trespass upon the private property, real or personal, of another originally constituted a breach of the peace, and therefore an indictable offense, or misdemeanor at common law, there can be no doubt of the fact that whatever *Page 286 
act could amount to a breach of the peace at common law would be indictable as a criminal offense, and a misdemeanor, at least, at common law, for that was from time immemorial the acknowledged test and criterion by which the common law distinguished a public from a private; wrong merely, and determined whether it was indictable as a common law offense or not; and it is certain that every breach of the peace was indictable at common law, because it immediately concerned the King, his crown and dignity, and because he was the grand conservator of the peace of his kingdom, and therefore the wrong which it constituted was against him and his sovereign authority, as well as against the subject, or private individual injured by it. And although the Court of King's Bench held as late as the time of Lord Manfield in the case of Rex. v.Storr, 3 Burr. 1698, that the mere terms of vi et armis
alleged in an indictment at common law for a forcible entry into real estate and turning the owner out of the possession of it, with nothing more, and without the words et manu forti, would not import that it was done with sufficient force to constitute a breach of the peace to render the act of mere trespass in that case an indictable misdemeanor, yet it does not, nor was it intended to reverse or impair the ancient and well established rule that wherever the act alleged in the indictment is so alleged as to constitute a breach of the peace, it is prima facie indictable as an offense at common law.
But admitting, as we may, that such a malignant and malicious and aggravated injury as we are considering in this case, would not now be indictable as a misdemeanor at common law in England, because under the later rulings and practice of the Courts there it would not have constituted a breach of the peace in contemplation of law, we will next consider and enquire if this can be the common law rule with us under the special statutory provisions which have long been in force in this State, and which seem to have an important bearing on the subject. We *Page 287 
allude to the provisions of Sections 7 and 12 ofChapter 97 of the Revised Code, p. 331, and ofSection 18 of Chapter 127 of the Revised Code,p. 475, the first of which provides for binding to keep the peace persons who threaten to kill, or wound another, or to injure him in person, or estate, and the last of which provides that assaults, batteries, and nuisances, not specially provided for by statute, shall be deemed misdemeanors, and shall be punishable by fine and imprisonment, or either, according to the discretion of the Court. Sir William Blackstone with the characteristic partiality with which he contemplates and commends the superiority in his view of the laws and institutions of the realm of England generally, claims for it in his chapter on preventive justice, as contradistinguished from punitive justice, almost the sole honor among the governments of his day, of having by law any means of preventing the commission of crimes and misdemeanors. Now, it so happens that we have, and have had for a long time in this State, borrowed, doubtless, at an early date from the laws of England on the subject, a much more comprehensive and liberal statute for that purpose, than can be justly boasted of by any British subject in that country. The proceeding, however, in such cases is very much the same here as there, the jurisdiction and redress there being thus defined by him; after stating the authority of any justice of the peace there, ex officio, to bind all such persons to keep the peace as should in his presence commit the acts mentioned, he adds: "also wherever any private man hath just cause to fear, that another will burn his house, or do him a corporal injury, by killing, imprisoning, or beating him, or that he will procure others to do so, he may demand surety of the peace against such person; and every justice of the peace is bound to grant it, if he who makes it will make oath that he is actually under fear of death or bodily harm, and will show that he has just cause to be so, by reason of the other's menaces, attempts, or having lain in wait for him; and will also further swear that he *Page 288 
does not require such surety out of malice, or for mere vexation. This is called swearing the peace against another; and if the party does not find such sureties as the justice in his discretion shall require, he may immediately be committed till he does." 4 Blacks. Com. 254, 255. And this security was taken by a recognizance before the justice entered into by the principal and his sureties, the main condition of which was that the principal should in the mean while keep the peace, and to appear at the next sessions, and to which it would be certified and returned by the justice. The causes for which such surety of the peace could be required are also stated by Hawkins to be, wherever a person has just cause to fear that another will burn his house, or do him a corporal hurt, as by killing or beating him, or that he will procure others to do him such mischief, or is threatened to be imprisoned by him. 1 Hawk. Sects. 6, 7,p. 254. And which are substantially as same as stated by Sir William Blackstone. And they were each of them acts which when committed would constitute a breach of the peace at common law, and therefore it was that this judicial proceeding to prevent the commission of these special offenses when justly apprehended by any one at the hands of another, was a proceeding to prevent a breach of the peace, and which, of course, it could not have been, unless the acts and wrongs it was intended to prevent when committed, should amount in law to breaches of the peace.
But as we have before remarked, the provisions of the statute of this State on the subject are much broader, and the causes for which security of the peace may be here required are very different from what they are in England, although in this State such security can only be demanded on threats actually made by the party against whom it is demanded, as provided for in the statute. And as we have seen, it is not only "whoever shall threaten to kill or wound another," is to be subject to such demand, but "whoever shall threaten to kill or wound another, or to injure him in person, or estate," shall on proof such *Page 289 
threats before a justice of the peace, be subjected to it under our statute, and shall be required to enter into recognizance with surety to be approved by such officer, conditioned for his apearance before the next Court of General sessions of the Peace and Jail Delivery, to be held in the county, there to answer such matters as shall be objected against him by the complainant, and in the mean time to keep the peace and be of good behavior towards all the people of this State, and especially towards the complainant, and not to depart the Court without leave thereof, as is provided for and prescribed in 7 Sec.of chapter 97, Rev. Code 331 before referred to, and which in that section is denominated in terms a binding to keep thepeace, and which just as clearly imports a binding to preventa breach of the peace by the execution of the threat to do the injury to the complainant in his person or estate, as alleged and set forth in his affidavit of complaint on which the proceeding was incepted. And accordingly, it has been long and uniformly held in the Court of General Sessions of the Peace and Jail Delivery, in which we are now sitting, that a threat by one person to injure another, either in his person, or in his estate, real or personal, is a threat to commit a breach of the peace under the provisions of this statute, and against which security to keep the peace may be demanded for the protection of the party threatened pursuant to the form prescribed in it. But every such threat is, of course, a threat to do the party threatened a malicious injury, and is also, of course, a threat to commit a breach of the peace under the effect and operation of the statute. And if so, has not the statute by necessary implication made every malicious injury done to another in his person or estate, even without any antecedent menace or threat to commit it, a breach of the peace in contemplation of law? For by what kind of legal magic or mystery could the statute make a threat to injure another in his person, or estate, a threat to commit a breach of the peace, without at the same time making indirectly and by necessary implication, *Page 290 
at least, every such malicious injury in the abstract a breach of the peace? Even the threat simply to commit such a malicious injury, because it is a threat under the statute to commit a breach of peace, is made a criminal act by it, first cognizable before a Justice of the Peace under his criminal jurisdiction, and then cognizable before this tribunal of general criminal jurisdiction below of tenses made capital and the crime of manslaughter, and it has therefore, made such a threat even an inchoate misdemeanor.
And if such a malicious injury when committed without any threat preceding it, is made by the necessary implication and operation of the statute, a breach of the peace according to the technical import and effect of those terms at common law, no punishment for it, as such, being specially provided by statute, is it not to be deemed a misdemeanor and indictable at common law under which all bleaches of the peace are indictable, unless it is otherwise provided by statute, pursuant to the meaning and intention of the 18 Sec. ofChapter 127, Rev. Code 475, before referred to, and which is as follows: "Assaults, batteries, nuisances, and all other offenses indictable at common law, and not specially provided for by statute, shall be deemed misdemeanors, and shall be punishable by fine and imprisonment, or either, according to the discretion of the Court?" Such at all events, are the conclusions of our minds on the questions here presented and considered.
The defendant was afterwards tried and convicted on the indictment at this term of the Court. *Page 291